IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFREY HARRIS, derivatively on behalf of Citigroup Inc., v. CHARLES O. PRINCE, ET AL., Defendants. | 1:07-cv-09841-SHS |
| GARY CINOTTO, derivatively on behalf of Citigroup Inc., v. CHARLES O. PRINCE, ET AL., Defendants. | 1:07-cv-09900-SHS |
| BENJAMIN NATHANSON, derivatively on behalf of Citigroup Inc., v. CHARLES O. PRINCE, ET AL., Defendants. | 1:07-cv-10333-SHS |
| SAM COHEN, derivatively on behalf of Citigroup Inc., v. CITIGROUP INC., ET AL., Defendants. | 1:07-cv-10344-SHS |
| WALTER E. RYAN, JR., derivatively on behalf of Citigroup Inc., v. CHARLES O. PRINCE, ET AL., Defendants. | 1:07-cv-11581-UA |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF SAM COHEN'S MOTION TO CONSOLIDATE ALL RELATED SHAREHOLDER DERIVATIVE ACTIONS AND APPOINT A LEAD COUNSEL**

## TABLE OF CONTENTS

I. INTRODUCTION ..........................................................................................................1

II. ARGUMENT ................................................................................................................3

       A.    Consolidation Is Warranted Given The Similarity Of The Actions............................3

       B.    This Court Should Appoint Brower Piven As Lead Counsel For The
Consolidated Derivative Actions ...............................................................................4

            1. Plaintiff Cohen's Complaint Is The Most Comprehensive
Complaint Filed ..............................................................................................6

            2. Brower Piven Is A Highly Experienced New York Based Firm.....................8

            3. Brower Piven Has The Most Knowledge Of The Applicable Law.............10

            4. Brower Piven Will Commit The Necessary Resources To Litigate
This Action...................................................................................................13

      III. CONCLUSION ...........................................................................................................14

I.  **INTRODUCTION**

Sam Cohen, plaintiff in *Cohen v. Citigroup Inc., et al.,* No. 1:07-cv-10344-SHS, respectfully submits this memorandum of law in support of his motion to consolidate, pursuant to Fed. R. Civ. P. 42(a), all related shareholder derivative actions involving defendant Citigroup Inc. ("Citigroup"), pending in the United States District Court for the Southern District of New York and to appoint the law firm of Brower Piven, A Professional Corporation ("Brower Piven") as lead counsel for plaintiffs (the "Motions").

Currently pending before this Court are the following related shareholder derivative actions (the "Actions"): (1) *Harris v. Prince, et al.,* No. 07-cv-9841-(SHS) (Nov. 7, 2007), filed by the law firms of Robbins Umeda & Fink, LLP ("Robbins Umeda") and the Law Offices of Thomas G. Amon ("Thomas Amon"); (2) *Cinotto v. Prince, et al.,* No. 07-cv-9900-(SHS) (Nov. 8, 2007), filed by the law firms of Johnson Bottini, LLP and Thomas Amon; (3) *Nathanson v. Prince, et al.,* No. 07-cv-103330-(JSR) (Nov. 14, 2007), filed by the law firms of Robbins Umeda and Thomas Amon; (4) *Cohen v. Citigroup, Inc., et al.,* No. 07-cv-10344-(SHS) (Nov. 15, 2007), filed by the law firms of Brower Piven; and, (5) *Ryan v. Prince et al.,* 07-cv-11581-(UA) (Dec. 26, 2007), filed by the law firms of Krislov & Associates, Ltd. ("Krislov") and Faruqi & Faruqi, LLP ("Faruqi & Faruqi").

The Actions listed above are brought by shareholders of Citigroup on behalf of Citigroup, against various individual defendants including Citigroup's current and former board members and officers (the "Individual Defendants"). Each Action above names both Citigroup as a nominal defendant and the Individual Defendants and contains similar allegations and causes of action. These actions alleges wrongdoing by the Individual Defendants, for, *inter alia,* breaches of fiduciary duties, waste of corporate assets, unjust enrichment and violations of the Securities

1

Exchange Act of 1934 (the "Exchange Act") that have caused substantial monetary losses to Citigroup and other damages, such as to its reputation and good will.

The Actions similarly allege that the Individual Defendants' wrongdoing is a result of: (1) failure to adequately oversee Citigroup's business in accordance with their fiduciary duties owed to Citigroup; (2) exposing the Company to liability for both federal and state law violations and SEC investigations, and misappropriating and unjustly enriching themselves and profiting from illegal insider trading in Citigroup stock. In mid-2000, Citigroup acquired the troubled subprime lender Associates First Capital for $30 billion and new evidence reveals that it was then that the company began to build its sub-prime loan portfolio. Then, at least as early as 2004, Citigroup became highly involved in collateralized debt obligations. Citigroup was investing billions of dollars of sub-prime loans, and sub-prime residential mortgage backed security collateral for its CDO portfolios, and was placing these under-performing assets in off-balance sheet structured investment vehicles. Specifically, Plaintiff Cohen's complaint alleges that in early-mid 2006, as the subprime mortgage and credit crisis began to increase, Individual Defendants caused Citigroup to subject itself to high levels of credit exposure through its involvement with CDOs.[1] As such, the Individual Defendants failed to adequately reserve

---

[1] Plaintiff Cohen's complaint alleges that the Individual Defendants' wrongdoing began as early as April 2006. Subsequent disclosures and Plaintiff Cohen's counsel's continuing investigation suggest that actionable conduct and/or conduct giving rise to claims may extend as far back as 2000. See *New York Times* article entitled *Citigroup Buys Parts of a Troubled Mortgage Lender*, dated Sept. 1, 2007, available at http://www.nytimes.com/2007/09/01/business/01citihtml; ("The purchase of ACC Capital's assets recalls Citigroup's acquisition in 2000 of the consumer lender Associates First Capital, a purchase that had plagued the company for years."). The other four lawsuits comprising the Actions allege actionable conduct beginning only as far back as January 2007. See *Harris v. Prince, et al.*, No. 07-cv-9841-(SHS) (Nov. 7, 2007), at 1 ¶1; *Ryan v. Prince et al.*, 07-cv-11581-(UA) (Dec. 26, 2007), at 20 ¶47; In the fourteen page *Cinotto v. Prince, et al.*, No. 07-cv-9900-(SHS) (Nov. 8, 2007) complaint, there is not even a relevant time period referred to; *Nathanson v. Prince, et al.*, No. 07-cv-103330-(JSR) (Nov. 14, 2007), at 1 ¶1.

2

against these risks and failed to fully disclose the circumstances and ramifications of Citigroup's involvement in CDOs.

By November 2007, Citigroup revealed an $11 billion write-down of its sub-prime secured assets and new evidence reveals that the figure has grown to an estimated $22.2 billion write-down due to its soured mortgage-related investments and bad loans.

Plaintiff Cohen, a certified public accountant, has been a long term investor in Citigroup having purchased shares in its predecessor company, Commercial Credit Corporation in 1987, which became Primerica, which became Travelers Group which became Citigroup. Rather than rush to the courthouse, Plaintiff Cohen filed a comprehensive complaint containing detailed allegations of the Individual Defendants' wrongful conduct on November 15, 2007, eight days after the first derivative action was filed in this Court.

Plaintiff Cohen now seeks to have the Actions consolidated before this Court to ensure the expeditious and orderly prosecution of these matters. In addition, Plaintiff Cohen seeks to have Brower Piven appointed as lead counsel. Brower Piven is clearly the most qualified counsel to lead and organize the shareholder derivative action. Accordingly, Plaintiff Cohen requests that this Court enter Plaintiff Cohen's [Proposed] Order to (1) consolidate all related shareholder derivative Actions; and (2) appoint Brower Piven as lead counsel.

## II.   ARGUMENT

### A.   Consolidation Is Warranted Given The Similarity Of The Actions

Federal Rule of Civil Procedure 42 provides for the consolidation of actions "if actions before the court involve a common question of law or fact, the court may (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay. *See* Fed. R. Civ. P. 42(a). Pursuant to Fed. R. Civ. P. 42(a), consolidation is appropriate in shareholder derivative actions where "[t]he complaints are

3

largely overlapping and raise common questions of law and fact. *See In re Tarragon Corporation Sec. Litig.,* No. 07-cv-7972-PKC, 2007 U.S. Dist. LEXIS 91418, at *2 (S.D.N.Y. Dec. 6, 2007) (Consolidating three shareholder derivative actions that similarly alleged false and misleading statements were issued concerning the financial condition of the defendant company); *See also In re Comverse Tech, Inc., Derivative Litig.,* No. 06-cv-1849-(NGG), 2006 U.S. Dist. LEXIS 94235 (E.D.N.Y. Sept. 26, 2006) (citing *MacAlister v. Guterma,* 263 F.2d 65, 68 (2d Cir. 1958))("an order consolidating such derivative actions during the pre-trial stages, together with the appointment of a general counsel, may in instances prove the only effective means of channeling the efforts of counsel."); *Weisberg v. Coastal States Gas Corp.,* No. 78-cv-5942, 1982 U.S. Dist. LEXIS 13260 (S.D.N.Y. June 16, 1982)(consolidation of related shareholder derivative actions is appropriate).

Plaintiff seeks consolidation of the Actions as all of the Actions raise common questions of law and fact and arise out of the same alleged conduct on the part of Defendants. Accordingly, these Actions should be consolidated pursuant to Fed. R. Civ. P. 42(a).

### B. This Court Should Appoint Brower Piven As Lead Counsel For The Consolidated Derivative Actions

"There is no statutory authority [] such as the Private Securities Litigation Reform Act of 1995 ("PSLRA") [] which requires the [c]ourt to appoint a lead plaintiff in a shareholder derivative action." *In re Comverse,* 2006 U.S. Dist. LEXIS 94235, at *5 (citing *In re Doral Fin. Corp. Sec. Litig.,* No. 05-MDL-1706, 2006 U.S. Dist. LEXIS 24647, at *1 (S.D.N.Y. Apr. 27, 2006)) (citations omitted).

> Rather, derivative actions must comply with [Fed. R. Civ. P.] 23.1, which requires only that a plaintiff in a derivative action 'fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association. While 23.1 does not make reference to the appointment of a 'lead' plaintiff…the Advisory Committee Notes make clear that

4

in a derivative action 'the court has the inherent power to provide for the conduct of the proceedings...'

*Id.*

"While the Rule may contemplate the appointment of a lead plaintiff, the Court is not aware of any precedent requiring as such. Indeed, many courts in this district and others have consolidated derivative actions, appointed lead counsel, but not appointed a lead plaintiff." *Id.* at 6; (citing *In re DHB Indus. Inc. Derivative Litig.* No. 05-cv-4345 (E.D.N.Y.) (Jan. 31, 2006 Order adopting Report and Recommendation dated Jan. 1, 2006)(consolidating derivative actions and appointing lead counsel without appointing lead plaintiff); *Computer Assocs. Int'l, Inc. Derivative Litig.* No. 04-cv-2697 (E.D.N.Y. Oct. 19, 2004) (same); *In re NBTY, Inc. Derivative Litig.*, No. 04-cv-2876, (E.D.N.Y. Nov. 4, 2005) (same); *Scalisi v. Fund Asset Mgmt., L.P.*, No. 02-cv-5592 (E.D.N.Y. Jan. 31, 2003) (same); *Bernstein v. Presidential Life Corp.*, No. 92-cv-6968-VLB, 1993 U.S. Dist. LEXIS 1876 (S.D.N.Y. Feb. 10, 1993).

In addition, Rule 23.1 contains no provision for the appointment of lead counsel. *See* Fed. R. Civ. P. 23.1. Nonetheless, as demonstrated above, courts routinely appoint lead counsel in shareholder derivative actions. *See e.g., Macalister*, 263 F. 2d at 68. Courts, however, have consistently utilized the criteria set forth in Fed. R. Civ. P. 23(g)(1)(c)(i), to appoint lead counsel in shareholder derivative actions; These factors are: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class." *See* Fed. R. Civ. P. 23(g)(1)(C)(ii); *see also In re Comverse*, 2006 U.S. Dist. LEXIS 94235, at *9. These criteria, in addition to the reasons set forth below, all point towards the approval of Plaintiff Cohen's selection of Brower Piven as lead counsel.

5

1. **<u>Plaintiff Cohen's Complaint Is the Most Comprehensive Filed</u>**

Plaintiff Cohen's complaint is more comprehensive the complaints filed by the other four plaintiffs, reflecting both his superiority as a plaintiff in this derivative action, and the quality of his counsel work product. In particular, the complaints filed by Plaintiffs Harris and Ryan, respectively, contain allegations of wrongdoing that occurred during a "relevant period" extending only back to January 2007. Plaintiff Cohen's complaint alleges a "relevant period" as far back as April 2006. Subsequent disclosures and Plaintiff Cohen's counsel's continuing investigation suggest that actionable conduct and/or conduct giving rise to claims may extend as far back as 2000 when Defendants began building their sub-prime loan portfolio. However, neither Plaintiff Harris, nor Plaintiff Ryan, have alluded to this potential issue in their respective complaints or motions. Indeed, Plaintiff Ryan's Citigroup investment was made between 2002 and 2003 (with no indication of continuous ownership of shares since that time) [Ryan brief at], and Plaintiff Harris has provided no indication of when shares he owned at the time he filed his motion were purchased. With possible actionable conduct extending as far back as 2000, available evidence indicates that neither Mr. Harris nor Mr. Ryan will have standing to assert claims on behalf of Citigroup attributable to early actionable conduct.

That neither Mr. Harris's nor Mr. Ryan's counsel, in their rush to seek appointment as lead counsel, have furnished this information to the Court demonstrates their inadequacy to serve as lead counsel. In order to assert claims derivatively on behalf of Citigroup, a plaintiff must demonstrate that he or she has continuously held Citigroup stock since the beginning of the time of the occurrence of the wrongful conduct giving rise to the claims. With the circumstances giving rise to harm brought upon Citigroup by actionable conduct stretching ever back in time, Plaintiff Cohen, who has held his investment continuously since 1998 when Travelers Group and

6

Citicorp merged with Citigroup, he will most certainly have standing to assert any claims that may come to light as the sub-prime saga continues to unfold. *See In re Bank of New York Derivative Litig.*, 320 F.3d 291, 293 (2d Cir. 2003)("in order to have standing to bring a shareholder derivative action, a plaintiff must have owned stock in the company at the time of the alleged wrongdoing").

In contrast, Mr. Ryan's position that his relatively recent acquisition of 50,000 shares of Citigroup stock entitles his counsel to some preference has no basis, particularly since quantity of shares can never overcome a lack of standing to pursue the interests of Citigroup regarding wrongful conduct occurring prior to their first purchase. Nor does Mr. Harris's rush to file his complaint warrant any entitlement to select lead counsel to prosecute this litigation, particularly when his rush to seek to have his counsel selected as lead was not accompanied by any evidence that he even has standing to pursue those claims he has asserted going back to January 2007.

Plaintiff Cohen's long term investments in Citigroup coupled with his well-pled, comprehensive complaint, indicate that he has standing to pursue each of the claims asserted and to pursue those claims from that may be asserted based on quickly evolving new information. Based on the submissions, only Mr. Cohen has the ability to ultimately be determined to continuously represent the interests of Citigroup no matter how far back the actionable conduct may extend makes him a most valuable and appropriate person to pursue known and unknown claims. Accordingly, an analysis of the quality of the pleadings filed with the Court and the standing of Mr. Cohen possesses strongly support Plaintiff Cohen's motion for Brower Piven to be appointed lead counsel in the Actions.

## 2. **Brower Piven Is A Highly Experienced New York Based Firm**

Located in New York City, with an additional office in Baltimore, Maryland, Brower Piven attorneys have more experience litigating shareholder actions than the other firms that have presented their resumes. *See* Declaration of Elizabeth A. Schmid ("Schmid Decl."), Ex. A. As demonstrated by the firm's resume, Brower Piven attorneys have more than 20 years of experience in successfully prosecuting shareholder and securities class action litigation and have frequently served as lead or co-lead counsel in major securities class actions before this Court and others nationwide.

The firm and its attorneys have consistently been appointed lead and co-lead counsel in complex securities and consumer class actions and shareholder derivative actions. In particular, David A.P. Brower, the senior partner handling this case, has extensive experience in shareholder derivative litigation and has litigated numerous derivative actions as lead or co-lead counsel from start to finish. The Court can be comfortable that if Brower Piven is appointed lead counsel in this action, its attorneys will vigorously prosecute the Actions.

Moreover, the appointment of Brower Piven will ensure that there is no duplication in billing, no complications with regard to using multiple counsel, and no inconveniences or added costs of using counsel located outside of New York. Clearly, these complications would arise if either Krislov or the Robbins Umeda and Thomas Amon team were appointed as lead counsel. Krislov is located in Chicago, Illinois, yet seeks to be primarily responsible for the day-to-day prosecution of this New York-based case. Krislov can only do so by retaining local counsel (Faruqi & Faruqi). Thus, there would be two law firms billing for what one law firm, located near the courthouse in New York, can do alone. Robbins Umeda, located even farther away in San Diego, California, seeks to be co-lead counsel with Thomas Amon; hence, again, almost

8

certainly necessitating the duplication of efforts and complication of management of this litigation. "As the SEC observes, the approval of multiple lead counsel may engender inefficiency in class action litigation. The potential for duplicative services and the concomitant increase in attorneys' fees works against the approval of multiple lead counsel." *In re Milestone Scientific Sec. Litig.*, 187 F.R.D. 165, 176 (D.N.J. 1999) (citing *Chill v. Green Tree Fin. Corp.*, 181 F.R.D. 398, 404-05 (D. Minn. 1998))(the structure of proposed leadership should not be "too distended to efficiently manage the prosecution of the action)); *see also Reiger v. Altris Software, Inc.* 1998 U.S. Dist. LEXIS 14705, at *15-16 (S.D. Cal. 11 Sept. 1998) (observing the enlargement of the number of lead counsel may "unnecessarily increase the time and expense spent on preparing and litigating the case"); *Ballan v. Upjohn Co.*, 159 F.R.D. 473, 491 (W.D. Mich. 1994)(quoting Manual for Complex Litigation 2nd § 20.22 at 16)(stating "the number [of lead counsel] should not be so large as to hamper the unity of direction that is needed").

Moreover, the fact that both Krislov or the Robbins Umeda and Thomas Amon team seem complex, multi-counsel structures, without even bothering to explain why such structures are necessary or how they will benefit Citigroup or its shareholders, renders their motion fatally flawed. "[W]here several lead counsel are appointed, there is the potential they may ultimately seize control of the litigation..." *In re Milestone*, 187 F.R.D. at 176. Accordingly, as multiple law firms will only serve to complicate the management of this litigation, and increase exponentially the transaction costs of this litigation for plaintiffs, "there need only be one cook for this broth." *Roth v. Knight Trading Group, Inc.*, 228 F. Supp. 2d 524, 531 (D.N.J. 2002) (finding appointment of one law firm sufficient as additional counsel would lead to "duplication of effort, with increased cost to the Class).

Moreover, although Thomas Amon, the only New York-based lead counsel candidate offered by plaintiffs Ryan and Harris, has been involved in three other shareholder litigations, all of which, coincidentally, filed with Robbins Umeda, in only one of those was he a co-lead counsel,[2] and that case has suffered serious set-backs and delays, due, in no small part, to objections to the proposed interconnected class and derivative settlement in that case filed by the Attorney General of United States of America. Simply, Mr. Amon's first outing as a lead counsel in a shareholder action has not been an auspicious start, nor does it recommend his appointment as a lead counsel in an action involving one of the largest corporations in the world and over $22 billion in losses to date.

Therefore, Brower Piven is the appropriate choice for lead counsel in this action.

### 3.   Brower Piven Has The Most Knowledge Of The Applicable Law

Plaintiff Harris seeks appointment as "lead plaintiff" in this action – a non-existent status in shareholder derivative actions – ironically relying on exactly the type of conduct that was the perceived evil that led Congress to adopt the PSLRA lead plaintiff appointment procedures and

---

[2] The one instance in which Robbins Umeda & Fink, LLP and Law Offices of Thomas G. Amon were appointed as co-lead counsel in a shareholder derivative action was in *In re DHB Industries, Inc. Derivative Litigation*, No. 05-cv-4345(JS)(ETB) ("DHB"). The DHB derivative case was not litigated. Instead, the shareholder derivative action there was settled shortly after it was filed for no financial consideration to the corporation or its shareholders. The only cash consideration offered in the settlement of that action, in fact, was in the form of attorneys' fees to Derivative Lead Counsel. The DHB derivative action was settled solely as part of the settlement of companion class actions. *See In re DHB Industries, Inc. Class Action Litig.*, No. 2:05-cv-04296-JS-ETB. The class action settlement has been stalled for many months due to objections to that settlement filed by the United States. (*See* Docket Entry No. 316) ("United States objects to this proposed settlement to the extent that it may adversely impact the government's pending proceedings against certain of the defendants in this action, and asks the Court to reject the proposed settlement unless it is revised to address these issues"). As the derivative settlement is inextricably tied to the class action settlement there, the derivative settlement – which is also the subject of objections from shareholders.—remains in a void.

requirements – being *"first to file."* See e.g., Conference Report on Securities Litigation Reform, H.R Rep. No. 104-369 (1995). *See* Memorandum of Points And Authorities In Support Of Plaintiff Jeffrey Harris' Motion To Consolidate All Related Shareholder Derivative Actions And Appoint A Leadership Structure For Plaintiffs ("Harris Memo"), at 6 ("Plaintiff Harris was the first to file. Therefore, Plaintiff Harris is entitled to the 'tie-breaker'"). The rapid filing of the first complaint by Robbins Umeda and Mr. Amon[3] has conferred no benefits on the plaintiffs asserting shareholder derivative claims and cannot serve as the basis for appointing any of the competing counsel as lead in this action. In fact, the "first to file" rule has been consistently rejected by this Court, which has alternatively held that in its final analysis, the court should make its determination on the basis of the competency and experience of counsel. *See e.g. In re Comverse,* 2006 U.S. Dist. LEXIS 94235, at *14, n.8; *see also 1-800-Flowers, Inc. v. Intercontinental Florist,* 860 F. Supp. 128, 133 (S.D.N.Y. 1994)("courts need not slavishly adhere to the first filed rule"). Plaintiff Harris' reliance on *Armstrong v. Doyle,* 20 Misc. 2d 1087 (N.Y. Sup. 1959) to support his argument that he is entitled to appointment as lead counsel, is misplaced. In *Armstrong,* in ruling on the appointment of lead counsel in a shareholder derivative action, the court held that the decision should be made "on the basis of competency and experience in this field of the several attorneys representing the various plaintiffs…" *Id.* at

---

[3] Mr. Amon is also acting as local counsel for two other, separate clients and is seeking appointment as co-lead counsel on behalf of only one of his three putative clients. However, there is no indication in the record that Mr. Amon even first obtained consent from his other two clients to favor Mr. Harris before seeking to be co-lead counsel with Robbins Umeda, or an explanation why his other clients are not qualified to be lead plaintiffs in this action (assuming such a status existed in shareholder derivative actions). This situation raises questions about whether Mr. Amon, who filed those two other complaint in this District for those plaintiffs believed them qualified at the time to act as derivative plaintiffs under Fed. R. Civ. P. 23.1, or whether it was something he discovered subsequently that has led him to abandon those clients interests.

1089. That Plaintiff Harris was the first to file does not imply that he is necessarily presumed to be appointed as lead counsel. Accordingly, to the extent the first to file a complaint factor is considered by the Court in appointing lead counsel, in the circumstances of this case, it works to plaintiff Harris's disfavor.

In addition, although Plaintiff Ryan does not seek appointment as "lead plaintiff," he incorrectly attempts to utilize inapplicable PSLRA criteria to support his motion. *See* Memorandum Of Law In Support Of Motion To Consolidate Related Shareholder Derivative Actions and Appoint A Leadership Structure For Derivative Plaintiffs ("Ryan Memo"), at 6 ("Mr. Ryan has a tremendous economic interest in this litigation"). However, it is well settled that "…the PSLRA is simply not an adequate template from which to determine who should be appointed lead counsel in a shareholder derivative case." *In re Comverse*, 2006 U.S. Dist. LEXIS 94235, at *11 n.6 (rejecting plaintiff's argument that the PSLRA's largest financial interest standard should be applied in appointing lead counsel); *see also DiRienzo v. Phillip Services Corp.*, 232 F.3d 49, 61-2 (2d Cir. 2000)(distinguishing between "lead plaintiffs" in class actions under the PSLRA and "plaintiffs in derivative actions").

Furthermore, the PLSRA criteria for the selection of lead plaintiff is counter-intuitive in shareholder derivative litigation, and the size of an investor's holdings does not guarantee the same type of likely diligence in recovering for a nominal defendant corporation as it does for a class purchasers in a securities fraud case. This is because the contemporaries holding rule in derivative actions (which does not apply in securities class actions), creates potential conflicts for large shareholders. To continue as a so-called "lead plaintiff" in a derivative action, a shareholder must either hold the shares to the end of the litigation. Where the size of a plaintiff's holdings is the basis for such case leadership, large shareholders may face serious conflicts

12

between their individual investment interests and the interests of the case. If, in the course of the action, conditions change and favor sale of the stock, the larger the holder the greater that pressure to do so. Faced with large personal financial damage (that cannot be recovered in the derivative litigation) by continuing to hold the shares, and the opportunity to sell, and cut those losses, the larger the putative derivative plaintiff's holdings, the greater the chance he or she will resolve that conflict in his or her own financial self-interest. Accordingly, the size of a plaintiff's holdings is a poor measure for his or her leadership of such case. Indeed, in the context of shareholder derivative actions, long-term, smaller investors make superior plaintiffs because the likelihood that a further decline in the value of their shares would induce a sale is far smaller and therefore, the leadership and continuity of the case is far more secure.

In contrast, Plaintiff Cohen's counsel is familiar with the rules, procedures, and practices of this Court, and does not seek to have Mr. Cohen appointed to the non-existent post of lead plaintiff; rather, Plaintiff Cohen strongly encourages the Court, in accordance with this Court's well settled decisions in this regard, to appoint his experienced New York counsel as lead counsel to manage this litigation. Plaintiff Cohen understands that the criteria utilized in appointing lead counsel in shareholder derivative actions does not concern the "first to file" as plaintiff Harris incorrectly emphasizes, nor does it concern the "largest loss" as Plaintiff Ryan emphasizes. Rather courts have consistently utilized the criteria set forth in Fed. R. Civ. P. 23(g)(1)(c)(i), to appoint lead counsel in shareholder derivative actions.

### 4. The Necessary Resources To Litigate This Action

Brower Piven's attorneys have long experience in the successful leadership if complex litigation. *See* www.browerpiven.com. Based on its attorneys' long experience leading shareholder and securities class actions, it is well aware of the resources necessary to dedicate to

13

such actions to produce the best results. Brower Piven is prepared to commit those resources -- both in time and out-of-pocket expenses -- to vigorously prosecute this case to a successful conclusion for Citigroup and its shareholders. Its knowledge and understanding of what is entailed in prosecuting an action such as this, and not just a bald statements about its willingness to do so, militates strongly in favor of Brower Piven's appointment as lead counsel.

### III.  CONCLUSION

For the foregoing reasons, Plaintiff Cohen respectfully requests that this Court (1) consolidate the Actions and (2) appoint Brower Piven as lead counsel.


Dated:  New York, New York
        January 28, 2008

                                        Respectfully submitted,

                                        **BROWER PIVEN**
                                          A Professional Corporation

                                      By: /s/ *David A.P. Brower*
                                           David A.P. Brower
                                           Elizabeth A. Schmid
                                           488 Madison Avenue
                                           Eighth Floor
                                           New York, New York 10022
                                           Telephone: (212) 501-9000
                                           Facsimile:  (212) 501-0300

                                        *Counsel for plaintiff Cohen and Proposed Lead Counsel*